Welcome to Performance Study assignements, students all rise. Here he is, honorable Appellate Court, 2nd Judicial District is now back in session. Please be seated. You would be honored to the final face on the podium is David S. Traynor, Defendant's Cousin. On behalf of the Appellate Court, Mr. Brendan W. Caver. On behalf of the Appellate Court, Ms. Lynn Ann Harris. Thank you. Mr. Caver, you may proceed. Good morning, your honors. Morning. May it please the court, counsel. Your honors, David Traynor was deprived his right to an argument into a theory of his case upon which he was convicted of one count of predatory criminal sexual assault. This is a situation where defense counsel, myself, appropriately raised the issue that ultimately became the crux of the reason and the purpose of the court for frustrating defense counsel and the defendant's chosen trial strategy. When the trial court was notified that there was a video, the prosecution and the state had been put on notice for several months about the existence of the video and the defendant's intention of admitting it. Defense counsel's opening statement in any case represents a roadmap for the jury so it can follow along as it hears the evidence and testimony provided by the state and then by the defendant in determining and to be able to be on notice for what to watch out for. In this case, the trial court professed not to have any belief that the video that ultimately would establish the exact date upon which it was almost uncontroverted that the allegation against Mr. Dreher was made in the count of conviction that that event occurred on that particular date. Further, as your honors are well familiar with the record, in the defendant's motion for a directed verdict in the case, the count upon which the motion was granted in fact was granted by the trial court at least according to what the trial court made of record in part based upon the uncertainty of the timing of the count which was directed. In other words, the count of conviction for Mr. Dreher relied at least in part on the timing and the people's ability to prove beyond a reasonable doubt to the jury that though they didn't have to fix a specific date, the defendant could have made an argument consistent with what he desired to do prior to the trial court making its ruling in limine preventing defense counsel from mentioning the existence of the video, unless and until its relevance was demonstrated to the trial court. Upon a proffer, defense counsel stated that he did believe that the testimony from the witness, Stephanie Anderson, would in fact demonstrate why the timing of the occurrence depicted in the video was relevant to defense counsel's strategy. Ultimately, when Stephanie Anderson did testify, she in fact testified consistent with exactly what defense counsel expected she would testify to was that she recalled the specific date upon which she took the video and that was one of the very few instances that the defendant was ever even present in the home of the minor. Puzzlingly, once Ms. Anderson's testimony was heard by the court, the people actually requested that the issue be raised with regard to the video and then all of a sudden the trial court not only did find the video relevant but permitted it to be admitted. The Sixth Amendment to the Constitution requires that a defendant have the right to effective assistance of counsel. It doesn't mean perfect counsel, but it does mean that counsel should ought to have a strategy and a theory of the case that's believable to a jury. In order to demonstrate to the jury the state's failure to prove the defendant beyond a reasonable doubt guilty of the charged offense. Mr. Kaler, I believe the video was ultimately presented to the jury and I think it was admitted as substantive evidence, wasn't it? It was, correct. So how much prejudicial error accrued or arose based upon the fact that the defense counsel was not allowed to make comment in opening statement? Judge, it prevented me from making a road map for the jury and therefore it is unquantifiable given the nature of trial. By its very nature, trial is unpredictable. For the court to now review what could potentially have happened had the trial court not made that error in preventing defense counsel from drawing a road map for the jury. Could you have drawn a road map and mentioned the trampoline excursion without mentioning whether or not there was a video? I do not believe that that would have been anything other than hypothetical and incomplete hypothetical for the jury. And I'm just shooting from the hip here, Your Honor, figuratively speaking, but I don't know that any credible opening statement could be made about some vague reference to evidence that you're going to hear or something that you might see. You didn't mention it. I would just say on the day in question, there was an episode where the defendant and the alleged victim participated in some experiences on a trampoline and there was nothing to indicate that there was anything out of the ordinary insofar as that day was concerned. I think, unfortunately, this is exactly the pitfall that I was concerned about as I illustrated in not only my post-trial motion but in my opening brief. We could, for lack of a better term, armchair quarterback about other ways that it could have been handled, but that ignores the very fact that's staring us in the face that we had this extraordinarily puzzling determination after the fact that all of a sudden this video is relevant as soon as the State requests that it be admitted. It is inexplicable. Let's look at this from a different way. Tell me why precluding you from mentioning a video, not what's on the video but that a video exists and that, ladies and gentlemen, you may hear it, why precluding you from saying those words is reversible error? How did that make a material or how is that a material factor in the defendant's conviction here on count one, I believe? So I promise I will get there and to try to answer your question, I'm going to go sort of backwards in time. Your Honor raises a very good issue. We ultimately have the video being entered into substantive evidence later in the case. So if we go back and we retrace our steps to how we get there, it is reversible error because the very fact that the court does deem it relevant upon the request of the State means that it was always relevant to the case. In other words, there was nothing new presented by the State at the moment that the video was admitted that changed the circumstances of that video's admissibility or relevance. But wasn't it then for impeachment? It was. But isn't that a different? You never wanted to bring it in for impeachment purposes. No, but the-  Correct. And then the State said we'd like to use it for impeachment. Correct. And the court now is faced with both sides want it in and lets it in. Right. But it also has to be relevant. For impeachment purposes, it would have to be for something material anyway. And if it was material, then it's relevant. Okay. And so in terms of my being hamstrung in the opening statement in an effort to answer your original question, what is it about that that makes it reversible error that I wasn't able to mention it? The video was relevant. The video was relevant in any number of ways. At the very least, we have two specific ways that it was relevant. One way, it was for impeachment that was unbeknownst to anybody until that moment that it was used for impeachment. That's fine. But nevertheless, the video never stopped being relevant. It was relevant before motions eliminate. It was relevant before trial. It was relevant at the moment I provided my opening statement. In other words, that video was always relevant. There's nothing temporally that changed about the nature of the video or why it was going to be relevant when it actually ultimately ended up being relevant for the exact reason that I sprocketed to the court that it would be relevant as a separate issue from it being admitted for impeachment purposes. It's not fundamentally fair for a defendant to be prevented from providing a roadmap where we don't know what the evidence and testimony that the people are going to present is at trial. We don't know how everything is going to proceed. There is simply no devil's advocate argument here for the trial court's action to determine that the video was irrelevant based on the information that it had before the trial started. In the record as well, the trial court states, says, well, this is being addressed on the day of trial. No, it wasn't. It was addressed long before trial. This video had been disclosed to the prosecutor. Counselor, just from my understanding, the video is relevant to the argument that the child engaged in activities with the defendants immediately after it allegedly occurred, and the video is relevant to the point that she showed no sign of trauma, right? Is that basically the argument? Except for the very last portion, generally speaking, that's correct. My argument was going to be from the point of opening statement, which was it would be very odd for a child under these circumstances where this is alleged to have happened to then be playing on a trampoline. But didn't the fact of playing on the trampoline shortly thereafter come in anyway? Didn't you reference that in your opening statement concerning the grandmother's testimony? I attempted to, correct, yes. Okay. So, I mean, the exhibit being consistent with the grandmother's statement may have been admissible at that point, but how did it affect your ability to present your case if you were able to make this statement in your opening and reference the testimony of the mother or the grandmother of which the video was corroboration? How does that make any difference to the outcome of this case? It's a good question, and I think it, Justice McClaren, it ties into what he was asking as well. Defense counsel, in certain circumstances, pours over preparation for opening statements. I'm included in that group of people who pours over that. If I have a motion in limine, or if I have a ruling in limine that's instructing me one way, then I am going to have to roll with that punch, hope that issue is preserved for the record on appeal if there's an ultimate conviction, and then I'm going to do the best with what I can. Here, my entire opening statement would have been tooled to use and to highlight and to consistently beat into the jury's memory. They're going to hear this video, and therefore, that is how we fix the particular date that this is alleged to have occurred. Again, the motion for directed verdict was granted as to one count, at least in part based on the lack of ability of the state testimony. What was also the vagueness of the testimony and the statement? That was also in the record. You are absolutely correct. However, the timing, and as in the case immediately before this case that the court heard, there was an issue of timing. These issues are raised in almost every circumstance where you have a young alleged victim and there is an inability to recall dates. This court and the Illinois Supreme Court and the U.S. Supreme Court have all held consistently time and time again, the state is not forced, does not have an obligation to fix a particular date in order to get a finding beyond a reasonable doubt that a reasonable trier of fact can deliver to find a defendant guilty. However, this minor's testimony, as I'm sure you're familiar with in the record, it was very vague as to everything. To come back and to try to answer your question, Justice, the fact that the timing is so crucial in these cases means that I would have totally retooled my opening statement to fit with what should have been the correct ruling by the trial court to admit a clearly relevant video that the defendant sought to admit. All of that had to do with the roadmap that I wanted to show the jury, and for all we know, unfortunately we're dealing with hypotheticals, it could have been a directed verdict on both counts. I just want to give you one minute on the voir dire issue, so we took you off track. So the issue in the brief about examination of potential jurors and the questions posed, did you want to address that? Thank you, Judge. Yes, the particular courtroom that we were in had very good acoustics. The trial court was what we presume is well aware of that. The notion, and all throughout the trial, and I know you're familiar with the record, all throughout the trial, the court did seem to be favoring efficiency and economy in more than one way. It was concerning, and I do believe that in a situation where a court is well aware that it has very good acoustics, that people who are being asked about incredibly personal topics that are relevant to their service as jurors in criminal cases, especially where the exact issue that they're being questioned on is going to be the focal point of the determination that they're ultimately going to have to make regarding whether a defendant is guilty or innocent, that all of those issues should be handled with minimal regard to judicial efficiency or economy. Those have to be top of mind, and the trial court statement referring to bad dates and the minimization of what appeared to be minimization of sexual assault carried through to what can only accurately be described as a level of nonchalance with regard to the questioning of potential jurors in a sex assault case. So I would supplement what I set forth in my brief, my opening brief and my reply brief. No further? I have no further questions. I believe you wanted the question to be or to relate to sexual overtures or advances that wouldn't constitute a criminal offense, am I correct? That is correct, among other things, correct. Well, I don't know about, I'm not sure what other things there would be in the context of the question. And the questions that were asked by the court related to criminal offenses, did it not? Correct. So there's a distinction between the two? You wanted questions about things that weren't crimes, and the question that was given was about things that were crimes. Well, I think that the distinction, and I appreciate the question, but I think the distinction of what I think are crimes and what may not be crimes are two different things. I think the focus of the court appeared to be the minimization of things that could have been crimes, and when the trial court referenced to I'm not going to be asking people about bad dates, nobody was asking about bad dates unless they rose to the level of a sexual assault. That was what was relevant. And sometimes their sexual assault rises to the level of being prosecuted as a crime. Other times it doesn't. And that other conduct was specifically tied into the good acoustics in the courtroom. People are going to be reticent to talk about things that might have risen to the level of a crime but were never prosecuted. Maybe that did happen on a bad date. Maybe it didn't happen on a bad date. The minimization was puzzling, especially in terms and given the fact of the subject matter that was going to be heard by this jury. Okay. Thank you. You'll have an opportunity to make your vote. Thank you. Thank you. Ms. Harrington, you may proceed. Good morning, Your Honors. Counsel, my name is Lynn Harrington, and I represent the people of the state of Illinois. Your Honors, I thought I'd start with the second issue because that seemed that took up a lot of counsel's time, and I'd like to respond to some of his arguments. The first thing that caught my attention, Your Honors, is that what counsel is trying to do here is use a relevancy standard for the concept that hindsight is 20-20. So if it became relevant at trial, then it was always relevant. And that's absolutely not the case with relevancy, as you well know, Your Honors. What a trial court needs to look at pre-trial is how is this relevant, and it has to be defense counsel's burden to show how it is relevant. As the court said, all I have here is a video of a trampoline with the defendant bouncing on it with the victim and the victim's younger sister. We don't have an alleged date of the sexual assault. We have a time frame, which is clearly well-settled law is fine in sexual assault cases. So tying the trampoline to the offense, and the defense just couldn't do it. In fact, the record reflects that defense counsel conceded that, yeah, AD is probably not going to get up on the stand and give a date for the actual sexual offense. And, yeah, my client has a right to decide whether he wants to testify after the people have rested their case. So, yeah, that's all I have. I have a trampoline and three people jumping on it. And there's no way that would have been appropriate for the trial court to admit into evidence. As I properly said, I'm not going to allow you to bring up something in an opening statement that might seriously sway the jury that's not even going to come in. The case law says, Your Honor, in order for any error to be found in opening statements, you've got to prove two things. You've got to prove that the defendant was harmed by the decision and that it was a material factor in his conviction. Let me get to the first one since it's in the conjunctive. And if you can't hit material, you lose. We know it's not material, Your Honors, because, if I can incorporate the first issue, the defendant was proven beyond a reasonable doubt of predatory criminal sexual assault based on the essential elements of this offense that had nothing to do with the trampoline video. And he doesn't even argue in his brief that the essential elements were not met. So he's forfeited that argument. We know the defendant knowingly committed an act, however slight, between the sex organ or anus of A.D. here and the body part of another person's defendant, his hand, for the purpose of sexual gratification or arousal of the victim or defendant. How do we know that? We've got A.D.'s initial outcry to her therapist, not related to anything else. She's there for anxiety. She says, my step-grandfather touched my private parts two times. Then we've got the CAC interview when she tells the DCFS investigator, my step-grandfather rubbed my vagina and moved his hand around. He put his hand under my underwear and did this. In addition to that, Your Honors, we have cooperation from the defendant himself and from the defendant's wife, who happens to be the victim's grandmother. They both say that they were there, the defendant and the grandmother, on May 29, 2011. They both say there was a brown couch and that the grandmother and A.D.'s mother were in the kitchen. They both say that there was a baseball game on TV. So now you're corroborating these facts that this child has put into evidence. So with all that, Your Honors, this was an issue for the trier of facts, to assess the credibility of all these parties, of all these witnesses, and determine who was more credible. And as I've mentioned in my brief, Your Honor, what the defendant is trying to do here is to get you to reweigh the evidence. And you and I both know that that's not your duty to do so. There's many reasons why. Let me also go to defendant cites in his brief Abrams to constitute reversible error, an improper reference with an opening statement. Okay, so he had to prove prejudice. And this is very interesting, Your Honor. And he brings up again an oral argument on page 16 of his brief. With regard to prejudice, he cites Abrams, but then says, well, yeah, I can't tell you why it's prejudice because I can't tell you. That would hurt me on retrial. Well, that's not the standard either, Your Honor. He can't just allege that he's prejudiced by this and not explain to this court how he's prejudiced by it. And also, Your Honor, he can't possibly be prejudiced by it because he used it in closing argument. In opening statements, they're not arguments. They're just statements. But he got quite a shot to the jury three times in closing about this trampoline video. He acted as if the audio was never admitted into evidence, which we all know that it was. First, he says, the evidence in this case comes down to the believability and credibility of the person who told the story. That's A.D. She testified that she could never play on the trampoline with defendant. First of all, Your Honors, that's an untrue statement. A.D. never testified that she never played on the trampoline with her step-grandfather. Instead, she said she did not remember testifying. Excuse me, she did not remember being on the trampoline with defendant on May 29, 2011. And that's more likely because of the fact that he just sexually assaulted her moments before, Your Honor. But allow me to continue. Defense counsel then says, you saw the video of her playing on the trampoline with defendant. You saw that video playing, and you heard those little girls laughing. Then later he says, you saw the video after something apparently happened on the couch watching a baseball game. Then you've got A.D. and her sister bouncing around and laughing on the trampoline with defendant. And finally, he says, a kid does not bounce around on a trampoline laughing with her step-grandfather after he has done the horrific thing that she accuses him of. So we got his theory in, Your Honors. He allowed the jury to let that sink in and think about it. Of course, the jury, like I said, heard the audio and saw the grandmother say to the child, hey, are you all right? And then when defendant tried to answer for her a couple more times, hey, are you okay? And if you look at the video, you can tell the girl is like standing there looking at her grandmother, just kind of barely bouncing, but the younger sister is bouncing and screaming and yelling. So we know she's referring to A.D. So for all those reasons, Your Honor, the trial court absolutely did not abuse its discretion in denying defendant's motion in limine to bar any reference of the trampoline video prior to trial. I'd also like to next discuss the issue that Your Honors asked about, the third issue, whether the trial court properly denied the defendant's request to ask all the jurors to be interviewed in camera on their own about their loved one's personal history with, I'm sorry, their personal history or personal history of their loved ones with unwanted sexual contact. As Justice McLaren clearly and accurately stated, this is a criminal case. Defense counsels don't get up, aren't allowed to get up there and talk about or ask questions about people's personal lives unless it amounts to a criminal offense. That's not a proper question. As the trial court properly said, these answers, these questions are too broad and they're going to lead to inappropriate and irrelevant information. And more importantly, Your Honors, the biggest issue and the biggest point in this issue is that the defendant never showed bias. And what he tries to say in his reply brief when I cite to Super and Cloutier is that it's overt or dicta. That is absolutely not the case, Your Honor. I have re-read these cases several times. And in Super, the issue was an insanity defense and defense counsel wanted every juror taken in camera and questioned and the trial court said no. Death penalty, so it goes right up to the Supremes. What the Supreme Court said? Reviewed the record. The court examined the prospective jurors individually as was done here. The trial judge excluded from service those persons whose backgrounds or views were inappropriate, which we assume happened here because defendant does not raise that issue on appeal. And then, most importantly, the Supreme Court says, the defendant makes no contention that any of the specific persons who actually served on the jury were other than impartial with respect to any issue of this case. And that's the issue that came up again in Cloutier. And the Cloutier defendant actually acknowledged this was a requirement. You've got to show actual bias. And here's the thing, Your Honors. Defense counsel talks about, well, Cloutier doesn't cite to Super for that, but if the Supreme Court of Illinois thought that the defense was making an inappropriate argument, they would have been the first one to say, hey, wait a minute, we never said it was a requirement. Instead, Your Honors, what they said is, this court specifically rejected this identical issue in Super. And they even responded to the defendant's argument that, oh, this would be impossible to prove. They said, well, defendant argues Super's requirement that a defendant show that a biased and prejudiced juror actually said there's a result of the Cloutier en masse is impossible to meet. The court says, if proper Cloutier questions have been posed and responses revealing no bias have been received, there's no basis than mere suspicion on which to challenge the impartiality of the jurors. Therefore, we decline to presume that mere exposure to another's bias tainted the veneer. Rather, we assume that the jurors were reasonable, conscientious, and impartial and able to apply the standards applicable in this instance. And that's exactly what happened here, Your Honor. The trial court gave the veneer a very objective question after asking defense what they wanted, after asking the state what they wanted. They let several of the jurors come up and talk quietly and whisper to the defendant. And that's another thing when the defendant brings up acoustics, Your Honor. First of all, the defense never argues on appeal that they said, oh, wait a minute, I don't like this whispering. I object to this whispering because I think people can hear it in the back. He never said that. He never brought this issue up. He mentioned in passing in the beginning when he asked his question to the court about wanting this broad question and he said the acoustics here are very good. So his arguing about acoustics has totally been forfeited on appeal. But back to my other point. These jurors were allowed to go up and talk to the court. The court told them, if you feel uncomfortable, we can take this, you know, out. And they never did. And defendant never alleges that he objected, saying, I don't like the sound of this guy's responses. I'd like this to go on camera. He never makes that allegation on appeal. So he's got nothing, Your Honor. He has absolutely no evidence whatsoever of any bias. So for that reason also, Your Honor, the trial court properly denied his request, both to go on camera with every juror or every veneer person, and the broad question he wanted about loved one's personal history with unwanted sexual contact. I think I've covered all my points, Your Honor. If you have any questions, otherwise I'd be happy to rest. Any questions? No, I have no questions. The panel unanimously indicates that it has no further questions. Thank you, Your Honors. For all these reasons, the people respectfully request that this Honorable Court affirm the judgment of the trial court. Thanks. Thank you. Thank you. Mr. Kaber, you may make rebuttal. Thank you, Your Honors. Counsel, respectfully, sidesteps the relevance issue. It's almost as if thou, the quote, thou dost protest too much. The relevance issue was established before trial, during trial, and then again after trial. The jury would have been focused like a laser on the video. Everything would have been able to have been handled in plenty of time for the audio to have been excluded from the video as was suggested and as was done by defense counsel prior to trial and disclosed to the people, which is all made a matter of record. Counsel's arguments uniformly devalue opening statements as an integral part of conducting a jury trial. In other words, Counsel, we're not arguing with you. Opening statement is clearly an important part of a trial, but as I asked you before, show me why failure to allow you to mention this video was reversible error, a material factor in the conviction. Because it disallowed me from making that whole argument to the jury from soup to nuts by being able to tell them that I'm going to show you a roadmap, I'm going to give you the evidence that I promised you in the roadmap, and then I am going to hammer the evidence in my closing argument as Counsel correctly stated that I did. All of that is the purpose, is the reason why jury trials are conducted in the manner that they are and why it's important for me to answer the hypothetical question about why it was reversible error, what potentially could have happened in the minds of the jurors that would have been different. That's what would have been different. They weren't looking at what I wanted them to look at from inception as I prepared my case long before we ever got into the issues of motions and limiting with trial court. To move to the juror issue, Counsel appears to believe that it was my desire to have every single juror questioned. That was not the case. It was only jurors who indicated that they had some prior negative sexual experience, whether, as Justice McClaren was asking, whether that rose to the level of criminality or should have risen to the level of criminality. All of that could have been legitimately explored. It is legitimately explored in at least one other county where I practice regularly. This is not some strange interplanetary request. This is something that happens regularly in child sexual assault cases because of the sensitive nature and because nobody wants to be serving as a juror who is anything less than totally impartial. And the standard, and I understand it, Counsel believes that that is the state of the law and it's not dicta. The standard that one would have to get to on review by the court is obvious. The reason why appellate courts are holding that, oh, you have to show actual prejudice, there has to be some evidence that a particular juror, that this was part of their thought process, is nearly impossible. Of course courts of review are going to find a standard like that because they're only in a position to be reviewing something that's already occurred in a trial court. What criminal defendants ought to be entitled to is prospectively doing everything we can without regard to judicial economy or efficiency to make sure that jurors aren't sitting who might, even might, have these issues in the back of their head when they are charged with determining the sole issue of guilt or innocence on the very issue that is before them. Can you point to anything, response by any juror who was seated, that would indicate to us they held a bias? No, and that would be almost impossible to do unless there was some retrospective questioning done of jurors. These jurors, in this case, saw me, I waited and I tried to ask every single one of them. They shot like a beeline for that elevator. There's no way to do it unless they're willing to come to you. Okay. Thank you, Your Honors. Do you have any further questions? I do have a question. I didn't see it. You don't? Thank you very much. Counsel. I think I might have a question, at least I did when you started. Did you file a motion in limine to seek the admission of the videotape prior to trial? It was filed in writing. Did you file a motion in limine attempting to get a ruling preliminarily on whether or not the video was admissible either for relevancy or impeachment or whatever? The answer is I did not file anything in writing. The requests were made in the pretrial conference and had been made of record and obvious to both the people and the court that this was going to be an issue. When you made your argument to the trial court relative to being allowed to make an opening statement, did you indicate to the court what you believe the foundational basis was for admission? Your Honor, may I take a very brief moment, please? Sure. Thank you. I certainly do not want to misspeak. Thank you. Your Honor's question was prior to trial? Prior to trial, yes. Essentially prior to the issue being raised, raising it after the fact, after the opening statements are given is somewhat closing the bar door. Right.  So, Judge, the supplement to the record page. 53 and 54, there is extensive colloquy regarding the state's motion to bar irrelevant and hearsay evidence. So that motion had been filed with the state, and then the discussion ensues about the particular video, and this is all happening at the pretrial conference on September 14th of 2023, so that would have been, I believe, the Thursday before the Monday of trial. And if I may briefly quote from supplement to the record, page 54, I advise the court, quote, Judge, this is a video that was recorded by Stephanie Anderson. She's going to be able to lay a foundation with the video that accurately depicts what's being shown. We want to have, when she lays the foundation for the video and the audio recording, we're asking that it be admitted in its entirety unredacted. The court, quote, relevant to what, end quote. And I'd be happy to go through it, but I do know that you're familiar with the record, and if you'd like me to read it, I'm happy to continue reading from the record. But, Your Honor, it's a very good question. I think what will happen is I think we will review the record to see what the total context was. Of course. Any other questions? No, sir. Thank you. We'll take the case under advisement. There are no other cases on the call. Court's adjourned. Thank you, Your Honor.